# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

**WESTFIELD INSURANCE COMPANY,**

        **Plaintiff,**

v.                                                            **CIVIL ACTION NO.   2:12-cv-00585**

**DAVID T. MITCHELL, III, et al.,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the court are three motions to dismiss the crossclaims and counterclaims asserted by David T. Mitchell, III ("Mitchell") in his answer to the amended complaint [Docket 128]. These motions are: (1) Crossclaim Defendant Damsel Properties, LLC's ("Damsel") Motion to Dismiss [Docket 137]; (2) Crossclaim Defendant Ryan McGinn Samples Research, Inc. d/b/a RMS Strategies's ("RMS") Motion to Dismiss [Docket 138]; and (3) Westfield Insurance Company's ("Westfield") Motion to Strike Defendant David Mitchell's Untimely Answer and to Strike and/or Dismiss Counterclaim [Docket 139]. Mitchell has responded to Damsel [Docket 141], RMS [Docket 142], and Westfield [Docket 143], and the motions are ripe for review. For the following reasons, Damsel's Motion to Dismiss [Docket 137] and RMS's Motion to Dismiss [Docket 138] are **GRANTED**, and Westfield's Motion to Strike Defendant David Mitchell's Untimely Answer and to Strike and/or Dismiss Counterclaim [Docket 139] is **DENIED IN PART** and **GRANTED IN PART**.

I.      **Factual and Procedural History**

This case is a declaratory judgment action brought by Westfield and arises out of a state court action involving each of the defendants in this case. On February 27, 2012, Westfield filed the instant suit seeking a declaratory judgment on three insurance policies. (Compl. Decl. Relief [Docket 1]). Westfield's amended complaint, filed September 11, 2012, added a fourth policy. (Am. Compl. Decl. Relief [Docket 82], at ¶ 47). Westfield seeks declarations that: (1) none of these policies cover the underlying allegations or give rise to a duty to defend; (2) Westfield be dismissed from further involvement in the state court action; and (3) Westfield is entitled to such further and additional relief as the court deems just and proper. (*Id*. at 78).[1] The state court action involves claims brought by Mitchell and Cazon LLC ("Cazon") against RMS, Damsel, R. Robert Samples II ("Samples"), Eimors Construction LLC ("Eimors"), and Aaron Wood ("Wood"). The state court complaint alleges defamation, malicious prosecution, abuse of civil process, breach of contract, negligence, negligent hiring, tortious interference with contract, civil conspiracy, and vicarious liability due to joint venture.

On August 10, 2012, the Clerk entered default against Cazon, Damsel, Mitchell, RMS and Wood. (Order [Docket 64)]). The default was set aside with respect to Cazon (Order [Docket 64]) and Mitchell (Order [Docket 65]), and Cazon is no longer a party to this action. (Mem. Op. & Order [Docket 69]).

---

[1] Since this litigation began, two additional policies issued by Westfield have come to light. These policies represent the crux of Mitchell's crossclaims and counterclaims and have been noted throughout this litigation. Mitchell argues that Westfield intentionally failed to disclose the existence of these policies, while Westfield contends that they offer no potential coverage and are irrelevant to this declaratory judgment action. To the extent that I have addressed issues related to these policies, I refer the parties to my July 25, 2013, Order [Docket 167]. However, the relevance of these policies or the merits of any claims of discovery violations are not before me today.

2

On September 10, 2012, Mitchell filed his initial response to the complaint, a motion to realign the parties and dismiss for lack of subject matter jurisdiction, to dismiss the complaint, or to stay pending a pre-existing state court action. ([Docket 78]). After I granted leave to amend the complaint (Order [Docket 81]), Westfield filed an Amended Complaint for Declaratory Relief on September 11, 2012. ([Docket 82]). Mitchell then filed a motion to realign the parties, to dismiss or to stay the amended complaint. ([Docket 97]). I denied both of Mitchell's motions on November 19, 2012. (Order [Docket 104]). Mitchell's next motion was a motion to stay pending his appeal of my November 19 Order (Mot. for Stay Pending Appeal of Collateral Order [Docket 109]), which he renewed on February 5, 2013. (Renewed Mot. for Stay Pending Appeal of Collateral Order [Docket 118]). I denied both of these motions on February 7, 2013. (Order [Docket 123]).

Mitchell filed his answer to the amended complaint on February 13, 2013, and added counterclaims against Westfield and crossclaims against Samples, RMS, and Damsel. (Answer of David T. Mitchell, III to Am. Compl. For Decl. Relief, Affirm. Defenses, Countercl. and Cross-cl. [Docket 128]). Mitchell's counterclaim and crossclaims allege abuse of process and civil conspiracy. (*Id.* at 10-12). Specifically, Mitchell alleges that "Westfield intentionally failed to disclose all of its liability insurance policies in its Amended Complaint." (*Id.* at 10). He additionally argues that the parties had a duty to disclose these policies under Federal Rule of Civil Procedure 26(a)(1) and intentionally failed to do so, amounting to an abuse of process. (*Id.* at 10-11). Finally, Mitchell alleges that the same failure to disclose additional policies and a conspiracy "to improperly create diversity jurisdiction" as well as "[t]he failure of the conspirators to take any position adverse to Westfield" amounts to a civil conspiracy. (*Id.* at 11-12).

3

Damsel's motion to dismiss, filed February 27, 2013, stated that Damsel had been defunct since 2009 and without assets for more than three years. It further argued that Damsel could not have been a party to an abuse of process or a civil conspiracy because it had not previously participated in this action. (Mot. to Dismiss [Docket 137]). Similarly, RMS's motion to dismiss stated that RMS had been dissolved by the Secretary of State of West Virginia since 2009, that RMS had no assets and no business operations, and that it could not have been a party to an abuse of process or civil conspiracy due to its inaction in the instant case. (Mot. to Dismiss [Docket 138]). Mitchell objected to both of these motions, arguing that they must be denied without prejudice due to Damsel's and RMS's failure to follow Local Rule of Civil Procedure 7.1(a)(2). Mitchell also argued that the suggested dismissals were fact-based and required conversion of the motions to dismiss to motions for summary judgment, and additional time to conduct discovery. (Resp. Br. of Cross-Claimant, David T. Mitchell, III, in Opp'n. to Mot. to Dismiss of Damsel Properties, LLC [Docket 141]; Resp. Br. of Cross-Claimant, David T. Mitchell, III, in Opp'n to Mot. to Dismiss of Ryan McGinn Samples Research, Inc., d/b/a RMS Strategies [Docket 142]).

Westfield's motion first asks the court to strike Mitchell's answer and counterclaim as untimely. (Westfield's Mot. [Docket 139], at 2-4). Additionally, Westfield argues that Mitchell's counterclaim should be dismissed for failure to state a claim upon which relief can be granted. (*Id.* at 4-11).

## II. Analysis

### A. Westfield's Motion to Strike Mitchell's Answer and Counterclaim as Untimely

The parties disagree as to whether Mitchell's answer to the amended complaint was filed in a timely manner. Pursuant to Federal Rule of Civil Procedure 12, "[a] defendant must serve an answer . . . within 21 days after being served with the summons and complaint[.]" Fed. R. Civ. P. 12(a)(1)(A)(i). Rule 12 additionally allows parties "serving a motion *under this rule*" to instead file their responsive pleading fourteen days after the court rules on a motion to dismiss. Fed. R. Civ. P. 12(a)(4)(A) (emphasis added). I denied Mitchell's motion to realign the parties, dismiss or stay on November 21, 2012. (Order [Docket 104]). Pursuant to Rule 12, therefore, Mitchell was required to file a responsive pleading on or before December 5, 2012. On December 4, 2012, Mitchell instead filed his motion for stay pending appeal. ([Docket 109]). However, a motion to stay is not a motion filed *under Rule 12*, which is required for a party to receive additional time to file its responsive pleading. *See* Fed. R. Civ. P. 12(a)(4)(A). Mitchell did not file his answer until February 13, 2013, five days after I denied his motion to stay. (Answer [Docket 128]; Order [Docket 123]). Therefore, I **FIND** that Mitchell's answer, counterclaims and crossclaims were untimely as filed.

However, the inquiry into whether a motion to strike should be granted does not end with the timeliness of the filings at issue. A district court "may exercise its discretion to grant [a] motion to strike." *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 8 (D.D.C. 2004). Additionally, "a motion to strike is an extreme and awesome remedy that is highly disfavored by the courts," (*Mitchell v. First Cen. Bank, Inc.*, No. 2:08CV6, 2008 U.S. Dist. LEXIS 68108, at *4

5

(N.D. W. Va. Sept. 8, 2008)), and the Fourth Circuit has a "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). I therefore decline to strike Mitchell's untimely answer, and instead turn to the merits of the motions to dismiss. For this reason, Westfield's motion to strike Mitchell's answer [Docket 139] is **DENIED**.

### B. Westfield, RMS and Damsel's Motions to Dismiss

#### 1. Procedural Arguments

##### a. RMS and Damsel's Violation of Local Rules

Mitchell correctly notes that both RMS and Damsel failed to observe Local Rule of Civil Procedure 7.1(a)(2), which states that "[a] memorandum of not more than 20 pages in length must accompany" a motion to dismiss. However, I have discretion to nonetheless review the substance of the motion in the interests of justice. *See, e.g., Branch Banking & Trust Co. v. First Am. Title Ins. Co.,* No. 5:11-cv-00473, 2013 U.S. Dist. LEXIS 5931, at *13 n.6 (S.D. W. Va. Jan. 15, 2013) (noting that defendants did not comply with Rule 7.1(a)(2) when filing their motion for summary judgment, but considering the substance of the motion "[i]n the interest of justice"). As noted by RMS and Damsel in their respective motions to dismiss, neither party has previously participated in this litigation. Additionally, Mitchell has not indicated that he would experience any prejudice if I were to hear the RMS and Damsel motions on the merits. Therefore, in the interests of justice, I decline to deny these motions for their non-compliance with the local rules, and I **FIND** that the motions should be decided on the merits. However, to the extent that they participate in this action in the future, I caution all parties to adhere to the local rules going forward.

### b. Mitchell's Argument that the RMS and Damsel Motions Should be Converted to Motions for Summary Judgment

Mitchell states in his opposition to the RMS and Damsel motions to dismiss that their suggested bases for dismissal are fact-based and require evidentiary proof and therefore should be converted to motions for summary judgment with a period of discovery. (Resp. Br. in Opp'n to Damsel Mot. to Dismiss [Docket 141], at 2; Resp. Br. in Opp'n to Mot. to Dismiss of RMS [Docket 142], at 2). I find this argument to be without merit. Neither Damsel nor RMS state the grounds under which Mitchell's crossclaims should be dismissed; however, both motions to dismiss can be properly read as asserting arguments under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Construed as a motion under Rule 12(b)(6), I **FIND** that both the RMS and Damsel motions to dismiss may be decided as a matter of law, as discussed further below.

### 2. Standard of Review

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing the sufficiency of a complaint must "take the facts in the light most favorable to the plaintiff," but "need not accept legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir. 2000)). Upon reviewing the facts contained in the complaint, the court must determine whether the stated claims "give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Furthermore, the plaintiff must allege "enough facts to state a claim to relief that is plausible on

its face." *Girratano*, 521 F.3d at 302 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

### 3. Substantive Arguments

#### a. Count I: Abuse of Process

In Count I of his counterclaim and crossclaims, Mitchell alleges abuse of process against Westfield, Samples, RMS and Damsel, related to the disclosure of additional liability insurance policies issued by Westfield. Specifically, Mitchell alleges that Westfield and Samples were required to produce these policies under Federal Rule of Civil Procedure 26(a)(1) and intentionally failed to do so, and that this failure to produce these policies "amount[s] to an abuse of process by using the civil processes of this court and its procedures for an improper purpose." (Answer [Docket 128], at 11).

"Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Preiser v. MacQueen*, 177 W. Va. 273, 279 (1985) (internal citations omitted). To properly state a claim for abuse of process, a plaintiff must allege: "first, an ulterior purpose, and second, a wilful

act in the use of the process not proper in the regular conduct of the proceeding." *Preiser*, 177 W. Va. at 279 n.8 (quoting W. Prosser, *Handbook of the Law of Torts* § 121 (1971)).

> Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Id.* Therefore, in order to proceed, an abuse of process claim must allege both an improper purpose and some intentional act that involves improper use of the legal process to attain that goal.

In the instant case, Westfield and Mitchell disagree about whether these additional policies were subject to required disclosure under Rule 26(a)(1). However, I need not decide that matter at this time, because Mitchell's abuse of process claim fails on its face. Even if Westfield were required to disclose these additional policies under Rule 26(a)(1), failure to do so, on its own, would not be sufficient to support an abuse of process claim. As found by another district court, conclusory allegations regarding a failure to produce documents "[a]t most . . . suggest a violation of civil discovery rules. Such a violation, on its own, does not constitute an abuse of process." *Flores v. Emerich & Fike*, No. 1:05-cv-0291 AWI DLB, 2008 U.S. Dist. LEXIS 49385, at *42 (E.D. Cal. June 18, 2008); *see also Erie Ins. Prop. & Cas. Co v. Johnson*, No. 6:09-cv-01532, 2011 U.S. Dist. LEXIS 91623, at *23-24 (S.D. W. Va. Aug. 15, 2011) (noting that the counterclaim defendant had been sanctioned for discovery violations, but finding that "neither the filing nor the mere pendency of a case are sufficient to support a claim for abuse of process").

Additionally, Mitchell fails to allege that the counterclaim defendants committed a "willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object[.]" *Williamson v. Harden*, 214 W. Va. 77, 81 (2003). In his counterclaim and crossclaims, Mitchell simply states that:

> Westfield, Samples, RMS and Damsel, acted intentionally, willfully, wantonly, maliciously and with intent to harm Mr. Mitchell and Cazon by not disclosing all applicable liability insurance policies in this declaratory judgment action and such intentional actions and omissions amount to an abuse of process by using the civil processes of this court and its procedures for an improper purpose.

(Answer [Docket 128], at 11). Conclusory allegations stating legal conclusions are not, in themselves, sufficient to state a claim upon which relief can be granted. *Giarratano*, 521 F.3d at 305. Moreover, even this conclusory statement does not allege an improper purpose underlying the actions of the counterclaim and crossclaim defendants. As noted in *Preiser*, abuse of process requires "misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." 177 W. Va. at 279 n.8. "The purpose for which the process is used, once it is issued, is the only thing of importance." *Id.* Even assuming that Westfield violated discovery rules, without an allegation that the use of legal process was used for an improper purpose, Mitchell's claim for abuse of process cannot stand.

Mitchell's reliance on *Barefield v. DPIC Cos., Inc.*, 215 W. Va. 544 (2003) is misplaced. In *Barefield,* the Supreme Court of Appeals of West Virginia addressed two issues: (1) "whether an insurance company may be held liable under the [West Virginia Unfair Trade Practices] Act for the conduct of a defense attorney hired to represent the interests of an insured in a liability action"; and (2) "whether an insurance company can be held liable for violations of the Act that occur after a lawsuit is filed against an insured." 215 W. Va. at 548. The court there held that "the

10

conduct of an insurance company or other person in the business of insurance during the pendency of a lawsuit may support a cause of action under the West Virginia Unfair Trade Practices Act." *Id.* at 559. However, Mitchell has not alleged any violations of the West Virginia Unfair Trade Practices Act. Rather, he asserted common law claims for abuse of process and civil conspiracy. Whether an insurer may be held liable under a statute that is not at issue in this case is irrelevant to whether Mitchells crossclaims and counterclaim pass muster under Rule 12(b)(6).

Accordingly, I **FIND** that Mitchell's counterclaim and crossclaims for abuse of process fail to state a claim upon which relief can be granted, and **GRANT** RMS, Damsel, and Westfield's motions to dismiss Count I.

### b. Count II: Civil Conspiracy

In Count II, Mitchell alleges civil conspiracy, based upon: (1) a conspiracy to not produce the additional insurance policies (discussed above); and (2) a conspiracy "to improperly create diversity jurisdiction," due to RMS, Damsel, Wood and Eimors defaulting in the action and failing "to take any position adverse to Westfield on coverage issues[.]" (Answer [Docket 128], at 11-12). Some of this argument appears to be in support of Mitchell's motion to realign the parties and dismiss, to dismiss or to stay ([Docket 97]), which I denied on November 21, 2012. (Order [Docket 104]). To the extent that the same issues are dealt with in the instant motions, I refer the parties to my November 21 Order [Docket 104].

West Virginia law recognizes a cause of action for civil conspiracy. *See Dunn v. Rockwell*, 225 W. Va. 43, 56 (2009); *Kessel v. Leavitt*, 204 W. Va. 95, 128 (1998).

> [A] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

11

*Dunn*, 225 W. Va. at 56 (quoting *Dixon v. Am. Indus. Leasing Co.,* 162 W. Va. 832, 834 (1979)). However, "[a] civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Dunn*, 225 W. Va. at 57 (citing *Kessel,* 204 W. Va. at 129). "[A]n actionable civil conspiracy must consist of wrongs that would have been actionable against the conspirators individually." *Id.* (quoting *Gulf Atlantic Life Ins. Co. v. Hurlbut*, 696 S.W. 2d 83, 102 (Tex. 1987)).

Therefore, in order to properly allege civil conspiracy, one must allege some other tort or unlawful action. *See Dunn*, 225 W. Va. at 57 ("A conspiracy may produce one or more torts. If it does, then every conspirator is liable for that tort, including a conspirator who promoted but did not commit the tort. A conspiracy is not, itself, a tort. It is the tort, and each tort, not the conspiracy, that is actionable.") (quoting *Segall v. Hurwitz*, 114 Wis. 2d 471, 481 (Wis. App. 1983)). However, in Count II, Mitchell does not allege any underlying torts or unlawful action by the purported conspirators. First, Mitchell argues that "Westfield, Samples, RMS and Damsel, acted intentionally, willfully, wantonly, maliciously and with intent to harm Mr. Mitchell and Cazon by not disclosing all applicable liability insurance policies[.]" (Answer [Docket 128], at 11). However, this is both conclusory and alleges, at most, a discovery violation. Although a discovery violation may be sanctionable by the court under Rule 37, it is not a tort or unlawful act sufficient to create liability for civil conspiracy.

Next, Mitchell argues that the parties conspired to improperly create diversity jurisdiction. As discussed above, there must be some underlying tortious act or unlawful action in order for a civil conspiracy to exist. "Where several combine and agree to do a lawful act, violative of no duty

12

to another due from them, it is not an unlawful conspiracy subjecting them to an action by him, though the act injure him, and was so intended." *Kessel v. Leavitt*, 204 W. Va. 95, 129 (1998) (quoting syl. pt. 3, *W. Va. Transp. Co. v. Standard Oil Co.*, 50 W. Va. 611 (1902)). To the extent that I have already dealt with the issues of alignment and diversity jurisdiction, I refer the parties to my order dated November 21, 2012 [Docket 104]. Additionally, creating diversity jurisdiction or defaulting in a case is not a tort or unlawful action that may give rise to a claim for civil conspiracy.

Finally, nowhere does Mitchell make any allegations of the parties working together towards an illegal goal. "[B]eyond agreement with a tortious purpose, co-conspirators must all act in some way which 'promoted' the tort." *Davis v. EQT Prod. Co.*, No. 5:12CV52, 2012 U.S. Dist. LEXIS 174646, at *11 (N.D. W. Va. Dec. 10, 2012) (citing *Dunn,* 225 W. Va. at 57). *See also Schenzel v. Enter. Rent-A-Car Co. of Ky.*, No. 2:02-0958, 2002 U.S. Dist. LEXIS 21077, at *4 (S.D. W. Va. Oct. 30, 2002) (dismissing counterclaim for civil conspiracy where "defendants make no concrete allegations of an illegal goal on the part of the plaintiffs"). Beyond conclusory allegations stating that the parties "conspired," Mitchell makes no claims of the parties promoting any tort or unlawful goal. These statements are insufficient to create an allegation of civil conspiracy. *See, e.g.*, *Tucker v. Thomas*, 853 F. Supp. 2d 576, 594 (N.D. W. Va. 2012) (stating that "[t]he Fourth Circuit has previously expressed the need to support conclusory statements and recitations of legal terms of art with factual allegations," and finding that because "[s]imply concluding that the parties acted 'individually and collectively' lacks any factual support whatsoever," the claim for civil conspiracy must be dismissed) (citing *Giarratano*, 521 F.3d at 302.

Therefore, I **FIND** Mitchell's counterclaim and crossclaims for civil conspiracy fail to state a claim upon which relief can be granted, and **GRANT** RMS, Damsel and Westfield's motions to dismiss Count II.

### III. Conclusion

For the foregoing reasons, **it is ORDERED that** Damsel's Motion to Dismiss [Docket 137] and RMS's Motion to Dismiss [Docket138] are **GRANTED**, and that Westfield's Motion to Strike Defendant David Mitchell's Untimely Answer and to Strike and/or Dismiss Counterclaim [Docket 139] is **DENIED IN PART** and **GRANTED IN PART**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 3, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

14