**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

WESTFIELD INSURANCE COMPANY,

               Plaintiff,

v.                                       CIVIL ACTION NO.  2:12-cv-00585

DAVID T. MITCHELL, III, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Westfield Insurance Company's Motion for Summary Judgment on Coverage Issues [Docket 102]. Both a response [Docket 120] and a reply [Docket 127] have been filed, and the motion is ripe for review. For the following reasons, this motion is **GRANTED in part** and **DENIED in part**.

**I.**      **Background**

This case is a declaratory judgment action brought by the plaintiff, Westfield Insurance Company ("Westfield"). Westfield seeks a declaration that claims against several defendants in an ongoing state court action are not covered by four insurance policies issued by Westfield.

The state court action involves claims brought by Cazon LLC ("Cazon") and David Mitchell III against R. Robert Samples II, Ryan McGinn Samples Research, Inc., d/b/a/ RMS Strategies ("RMS"), Damsel Properties LLC ("Damsel"), Eimors Construction LLC ("Eimors"), and Aaron Wood. The state court complaint alleges that on April 11, 2006, Damsel and Cazon entered into a commercial lease agreement. Under the lease agreement, Damsel leased the first

floor of 222 Capitol Street in Charleston, West Virginia to Cazon for a five-year period of use as a restaurant. Mr. Mitchell signed the lease as one of Cazon's managing members and as a guarantor on the lease. Mr. Wood signed the lease as manager and agent of Damsel. The state court complaint alleges Damsel violated the terms of the lease by failing to fix a significant water leak in the kitchen area of the restaurant. Cazon claims that it then hired outside consultants to investigate the water leak and discovered that the problem was the result of negligent construction by Eimors, which had been contracted by Damsel to construct the restaurant for Cazon. Cazon claims that it is the third-party beneficiary of Eimors' contract with Damsel. Additionally, Cazon and Mr. Mitchell have brought claims against Samples based on articles that appeared in the *Charleston Daily Mail* in September of 2007. Cazon and Mr. Mitchell claim that in these articles, Mr. Samples made false, defamatory statements about Cazon and Mr. Mitchell. In total, the individual claims are for defamation, malicious prosecution, abuse of civil process, breach of contract, negligence, negligent hiring, and tortious interference with contract. In addition to the various claims against each of the state court defendants, the state court plaintiffs brought claims for civil conspiracy and vicarious liability for a joint venture. (*See* Am. State Ct. Compl. [Docket 102-1]).

On February 27, 2012, Westfield filed the instant suit seeking a declaratory judgment on three insurance policies: Policy No. C.P. 3657582, which Westfield issued to RMS and Damsel ("the RMS/Damsel Policy"); and Policy No. C.P. 3962053 ("Eimors Policy I,") and No. C.P. 4051389 ("Eimors Policy II") (collectively, "the Eimors Policies"), both of which Westfield issued to Eimors. Westfield's Amended Complaint added a fourth policy, Policy No. OFH 2086256, issued to Mr. Samples and Brenda Samples ("the Samples Homeowner Policy"). (Am. Compl. Declaratory Relief [Docket 82] ¶ 47). Westfield seeks the following declarations:

a. That Claimants' claims against Samples, Wood, RMS, Damsel, and Eimors are not covered under the Samples Policy, the Eimors Policies, or the Samples Homeowners Policy;

b. That Samples, Wood, RMS, Damsel and Eimors are not owed a duty of defense or indemnity by Westfield Insurance Company under the Samples Policy, the Eimors Policies or the Samples Homeowners Policy;

c. That Westfield be dismissed from further involvement in this action; and

d. That Westfield is entitled to such further and additional relief as the Court may deem just and proper.

(*Id*. at 78).

Since the inception of this case, two additional policies that may provide coverage have been brought to the court's attention. (*See* Mot. for a Continuance, Entry of a New Sched. Order and Joinder [Docket 124]; Westfield Ins. Co.'s Mot. for Leave to File Supplemental Mem. in Supp. of Mot. for Summ. J. to Address Add'l Policies [Docket 156]). On July 25, 2013, I granted Westfield's request to file a supplemental memorandum in support of summary judgment addressing these two new policies. (*See* Order [Docket 167], at 3). However, Westfield failed to file this supplemental memorandum. Given these outstanding policies and my determination that summary judgment is not appropriate with regard to the Eimors Policy, I will only be ruling on coverage issues related to the four policies in the Amended Complaint in this Order.

## II. Standards of Review

### A. Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the

evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### III.   Analysis

#### A.  Insureds Under Each Policy

As a preliminary matter, I must determine which defendants are covered under each of the policies.

## 1.   The Samples Homeowner Policy

It is undisputed that the Samples Homeowner policy insures Mr. Samples. (*See* Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") [Docket 103], at 16). Mr. Samples and Brenda C. Samples are the named insureds on the Samples Homeowner Policy. (*See* Samples Homeowner Policy [Docket 102-7], at 1-4, 6). Brenda C. Samples is not a party to this action. Therefore, for the purposes of this litigation, I **FIND** that only Mr. Samples is an insured under the Samples Homeowner Policy.

## 2.   The RMS/Damsel Policy

The RMS/Damsel policy defines an insured as follows:

If you are designated in the Declarations as:

* * *

c.      A limited liability company, you are an insured. Your members, your partners and their spouses are also insureds but only in connection with the conduct of your business.

d.      An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(RMS Policy [Docket 102-4], at 18). It is uncontested that RMS and Damsel are named insureds covered by the RMS/Damsel Policy. (*See* Pl.'s Mem. [Docket 103], at 16). Westfield also concedes that "Defendant Samples is also an insured, because he is an executive officer of RMS and a manager of Damsel." (*Id.*). Mr. Wood and Eimors are not insureds under the RMS/Damsel Policy, because neither party is a named insured or an executive director, officer, or shareholder of a

named insured. I **FIND** that RMS, Damsel, and Mr. Samples are insureds under the RMS/Damsel

Policy.

### 3.   The Eimors Policies

The Eimors Policies define an insured as follows:

If you are designated in the Declarations as:

* * *

    c.    A limited liability company, you are an insured. Your members, your partners and their spouses are also insureds but only in connection with the conduct of your business.

    d.    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(Eimors Policy I [Docket 102-9], at 6; Eimors Policy II [Docket 102-12], at 5). It is uncontested

that Eimors is a named insured, and Mr. Wood is covered as a manager of Eimors. (*See* Pl.'s Mem.

[Docket 103], at 24). Westfield contests whether Mr. Samples is insured under the Eimors policy;

however, Mr. Mitchell presents evidence that Mr. Samples is a board member and part owner of

Eimors. (David T. Mitchell, III's Mem. of Law in Opp'n to Westfield Ins. Co.'s Mot. for Summ.

J. on Coverage Issues and in Further Supp. of his Prior Mots. for a Stay ("Def.'s Mem.") Ex. 3

[Docket 120-3], at 3, 5). Westfield does not deny that Mr. Samples is a board member and part

owner of Eimors. (*See* Westfield Ins. Co.'s Reply to Def. David Mitchell's Mem. of Law in Opp'n

to Mot. for Summ. J. on Coverage Issues ("Pl.'s Reply") [Docket 127], at 8-11). Therefore, I **FIND**

that Mr. Samples is an insured under the Eimors Policies when he is acting as a member or owner

of Eimors.

6

### B.  Policy Coverage

#### 1.  Defamation

In the state court complaint, Mr. Mitchell alleges that Mr. Samples defamed him in statements published in the Charleston Daily Mail on September 10 and 11, 2007. (*See* Am. State Ct. Compl. [Docket 102-1], at 11). Mr. Mitchell further alleges that the defamatory statements were made by Mr. Samples both "in his individual capacity, as well as, an agent for RMS Strategies, Damsel and Eimors." (*Id.* at 12).

#### a.  The Samples Homeowner Policy

The Samples Homeowner Policy generally covers defamation. The policy states that it covers "personal injury," which it defines as "injury arising out of one or more of the following offenses: . . . [l]ibel, slander or defamation of character." (Samples Homeowner Policy [Docket 102-7], at 23). Westfield acknowledges that claims for defamation generally fall within the purview of the agreement; however, it argues that Mr. Mitchell's claim falls within an exclusion in the policy, because "the alleged defamatory statements arise out of or in connection with a 'business' engaged in by an 'insured.'" (Def.'s Mem. [Docket 103], at 10). One of the exclusions listed in the section regarding personal injury states that "[p]ersonal injury insurance does not apply to: . . . "[i]njury arising out of a business engaged in by an insured[.]" (Samples Homeowner Policy [Docket 102-7], at 29). The term "business" is defined as "[a] trade, profession or occupation in which a person is engaged," or "[a]ny other activity in which a person is engaged for money or other compensation[.]" (Samples Homeowner Policy [Docket 102-7], at 6).

Mr. Mitchell argues that the business exclusion is ambiguous. Although Mr. Mitchell is correct that any ambiguities must be construed in favor of coverage (*see W. Va. Fire & Cas. Co.*

*v. Stanley*, 602 S.E.2d 483, 489 (W. Va. 2004)), the quoted business exception in this policy is not ambiguous. "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." *Am. States Ins. Co. v. Surbaugh*, 745 S.E.2d 179, 186 (W. Va. 2013). "[A]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." *Id.* at 186 (quoting Syl. pt. 10, *National Mut. Ins. Co. v. McMahon & Sons*, 356 S.E.2d 488 (W. Va. 1987)). Here, the exclusion is conspicuous, plain, and clear. The Samples Homeowner Policy provides both a definition for personal injury and specific exclusions to the personal injury coverage. (*See* Samples Homeowner Policy [Docket 102-7], at 23, 29). The policy also defines what qualifies as a "business" under the policy to invoke the exclusion. (*See id.* at 28). Finally, Mr. Mitchell does not make any allegation that Westfield did not bring the exclusion to the attention of Mr. Samples. I therefore **FIND** that the business exclusion contained in the Samples Homeowner Policy is not ambiguous.

Westfield argues that the allegedly defamatory statements made by Mr. Samples were made in connection with his position as the CEO of RMS and because of this there is no coverage under the Samples Homeowner Policy. Westfield also notes the following excerpt from Mr. Mitchell's deposition and argues that Mr. Mitchell has acknowledged that these statements were made in connection with a business operation:

> Q: These statements made by Mr. Samples that are set forth in these articles and attributed to Mr. Samples, were made in their entirety in the context of his discussions about the Damsel business relationship with Cazon as a lease tenant.

8

A. Well, all I know is he was stated and introduced in the articles as the CEO or the head of RMS Strategies, which is a public relation[s] firm, and then goes on to give his statement so.

Q. Okay. And let me rephrase it, then, to the extent that you raised that as an issue. He's making these statements related to a business operation whether that's for Damsel[,] Eimors or—

A. RMS.

Q. –or RMS.

A. Right.

(Def.'s Mem. Ex. J [Docket 102-14], at 5). It appears from the excerpt of the transcript provided that this line of questioning continues; however, Westfield does not include the following pages of the transcript with its memorandum. Mr. Mitchell, on the other hand, argues that "when Samples engaged in any actions with Mr. Mitchell he was always doing so as an owner and member of Eimors, RMS and Damsel, as well as, an individual," and that "it is a jury question as to whether or not [Mr. Samples] can really be legally separated from" RMS or Damsel. (Def.'s Mem. [Docket 120], at 9).

The West Virginia Supreme Court of Appeals has determined that "[t]he question of whether a particular activity or course of conduct comes within [the] definition of 'business pursuits' must necessarily be determined on a case-by-case basis, with due consideration given to the facts and circumstances of each case." *Camden Fire Ins. Ass'n v. Johnson*, 294 S.E.2d 116, 119 (1982). In the state court complaint, Mr. Mitchell alleges that "[t]he defamatory statements made by Robert Samples were both slanderous and libelous and were made *in his individual capacity, as well as, an agent for RMS Strategies, Damsel and Eimors*." (Am. State Ct. Compl. [Docket 102-1], at 12). The articles containing the allegedly defamatory statements, attached to

9

the state court complaint as exhibits, refer to Mr. Samples as "Robert Samples of RMS Strategies," and as "one of [sic] principals of Damsel Properties[.]" (Am. State Ct. Compl. Ex. 7 [Docket 171-1], at 29; Ex. 8 [Docket 171-1], at 32). In the articles, Mr. Samples discusses Mr. Mitchell and Cazon's occupancy of the building owned by Damsel at 222 Capitol Street. (*See* Am. State Ct. Compl. Ex. 7-8 [Docket 171-1], at 29-33).

The business exclusion included in the Samples Policy is quite broad, and excludes all personal injury "*arising out of* a business engaged in by an insured." (Samples Homeowner Policy [Docket 102-7], at 29). The face of Mr. Mitchell's complaint alleges that the statements were made in connection with the business of Damsel and Eimors, and the articles themselves show that each statement was made regarding the business relationship between Damsel and Mr. Mitchell. Therefore, I **FIND** that Mr. Samples's allegedly defamatory statements arose out of a business he engaged in, and the Samples Homeowner Policy does not offer coverage for Mr. Mitchell's defamation claims.

### b.   The RMS/Damsel Policy

The RMS/Damsel Policy does not cover "personal and advertising injury." (*See* RMS/Damsel Policy [Docket 102-4], at 7, 37). Rather, the RMS/Damsel Policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(RMS/Damsel Policy [102-4], at 10). "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person including death resulting from these at any time." (*Id.* at 22). With regard to property damage, the policy states:

"Property damage" means:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at 24). The RMS/Damsel Policy additionally provides that it only applies to bodily injury and property damage if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'[.]" (*Id.* at 10). An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 23).

Defamation does not fall within the policy's definition of bodily injury or property damage. Additionally, defamation falls within the policy's definition of "personal and advertising injury." (*Id.* at 24). As acknowledged by Mr. Mitchell, the RMS/Damsel Policy does not cover personal and advertising injury (*id.* at 7, 37; Def.'s Mem. [Docket 120], at 10 n.3). Therefore, I **FIND** that the RMS/Damsel Policy does not cover Mr. Mitchell's claims of defamation.

### c.   The Eimors Policies

As discussed above, the Eimors Policies apply to Eimors and to Mr. Samples when he is acting as a board member or owner of Eimors. The Eimors Policies apply to "'[b]odily injury' arising out of 'personal and advertising injury.'" (Eimors Policy I [Docket 102-9], at 2; Eimors Policy II [Docket 102-12], at 1). Personal and advertising injury includes "injury . . . arising out of . . . [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Eimors

11

Policy I [Docket 102-9], at 12; Eimors Policy II [Docket 102-12], at 11). Therefore, if Mr. Mitchell was acting as a member or owner of Eimors when he made the alleged defamatory statements, the Eimors Policies will provide coverage for Mr. Mitchell's defamation claims.

Mr. Mitchell's state court complaint alleges that the defamatory statements were in Mr. Samples's "individual capacity, as well as, an agent for . . . Eimors." (Am. State Ct. Compl. [Docket 102-1], at 12). The articles containing the allegedly defamatory statements refer to Mr. Samples's relationships with Damsel and RMS, not Eimors. (*See* Am. State Ct. Compl. Ex. 7-8 [Docket 171-1], at 29-33). However, the articles also discuss construction problems at 222 Capitol Street, including issues with the with the electrical wiring and the ability of the floor of the building to bear weight. (*See id.* at 29-32). The articles mention that Damsel had "hired Eimors Construction to remodel the building." (*Id.* at 30). Although Mr. Samples was not quoted in the articles as a member or owner of Eimors, a reasonable jury could conclude he was acting as a member or owner of Eimors by defending the quality of their work. "As a general rule, 'included in the consideration of whether an insurer has a duty to defend is whether the allegations in the complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.'" *Stanley*, 602 S.E.2d at 490 (quoting Syl. pt. 3, *Bruceton Bank v. U.S. Fid. and Guar. Ins.*, 486 S.E.2d 19 (W. Va. 1997). Additionally, a genuine issue of material fact precludes summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Viewing this evidence in the light most favorable to Mr. Mitchell, I **FIND** that there is a genuine issue of material fact as to whether the Eimors Policies cover Mr. Mitchell's claims for defamation.[1]

---

[1] The only issue that will be tried in this court is whether, for insurance coverage purposes, Mr. Samples was acting on behalf of Eimors when he made the allegedly defamatory statements in the *Charleston Daily Mail*. Whether or not

## 2.   Malicious Prosecution

Mr. Mitchell's state court complaint alleges malicious prosecution for a lawsuit filed by Damsel and verified by Mr. Samples in September of 2007. The state court complaint alleges that the action by Damsel "was without merit, inasmuch as it was dismissed with prejudice by Court Order on a motion to dismiss filed by Cazon and David Mitchell," and that pursuit of the case by Damsel and Mitchell amounts to a malicious prosecution. (*Id.* at 12-13). The action that Mr. Mitchell alleges constitutes malicious prosecution was filed by Damsel, with Mr. Samples's verification. Therefore, I must determine whether coverage exists under any of the four policies.

### a.   The Samples Homeowner Policy

Like defamation, the Samples Homeowner Policy also explicitly covers malicious prosecution as "personal injury." (*See* Samples Homeowner Policy [Docket 102-7], at 23). Westfield argues that the Samples Homeowner Policy does not apply to Mr. Mitchell's claim of malicious prosecution because it arises out of or in connection with a business engaged in by Mr. Samples.

The Samples Homeowner Policy provides that "[p]ersonal injury insurance does not apply to: . . . [i]njury arising out of a business engaged in by an insured[.]" (Samples Homeowner Policy [Docket 102-7], at 29). The state court complaint filed by Mr. Mitchell acknowledges that the complaint at issue was filed by Damsel. (*See* Am. State Ct. Compl. [Docket 102-1], at 12). Although Mr. Samples verified the complaint, he did so as an agent of Damsel and not on his own behalf. Therefore, I **FIND** that the Samples Homeowner Policy does not cover Mr. Mitchell's claim of malicious prosecution.

---

the statements contained in the articles were actually defamatory is an issue for the underlying state court litigation.

13

### b.   The RMS/Damsel Policy

As discussed above, the RMS/Damsel Policy provides coverage for personal and bodily injury. Malicious prosecution does not meet either of these definitions, because Mr. Mitchell's claim for malicious prosecution does not allege bodily injury or damage to/loss of tangible property. Additionally, malicious prosecution falls within the policy's definition of "personal and advertising injury" (RMS/Damsel Policy [102-4], at 24), and as acknowledged by Mr. Mitchell, the RMS/Damsel Policy does not cover personal and advertising injury. (*See id.* at 7, 37; Def.'s Mem. [Docket 120], at 10 n.3). I therefore **FIND** that the RMS/Damsel Policy does not offer coverage for Mr. Mitchell's claims of malicious prosecution.

### c.   The Eimors Policies

Unlike the RMS/Damsel Policy, the Eimors Policies cover "personal and advertising injury," including malicious prosecution. (Eimors Policy I [Docket 102-9], at 2-3, 12; Eimors Policy II [Docket 102-12], at 1-2, 11). However, as discussed above, Mr. Samples is only covered by the Eimors Policies to the extent that he is acting as a member or owner of Eimors. Mr. Mitchell's allegations regarding malicious prosecution do not allege that Eimors had any part in Damsel filing the lawsuit against Mr. Mitchell, or that Mr. Samples was acting as a member or owner of Eimors when he signed the verification. Rather, the complaint explicitly alleges that "[w]hen signing the Verification for The Complaint for injunctive Relief, Robert Samples was acting individually and as an agent for Damsel." (Am. State Ct. Compl. [Docket 102-1], at 12). Therefore, I **FIND** that the Eimors Policies do not offer coverage for Mr. Mitchell's claims of malicious prosecution.

### 3.  Abuse of Civil Process

Mr. Mitchell's state court complaint alleges abuse of civil process with regard to the complaint filed by Damsel and verified by Mr. Samples against Mr. Mitchell and Cazon. Specifically, the state court complaint alleges that "[t]he pursuit of The Complaint for Injunctive Relief by Damsel and Robert Samples against Cazon and David Mitchell amounts to an abuse of civil process [.]" (Am. State Ct. Comp. [Docket 102-1], at 13).

### a.  The Samples Homeowner Policy

Unlike malicious prosecution, abuse of civil process is not included within the definition of "personal and advertising injury" in the Samples Homeowner Policy. (*See* Samples Homeowner Policy [Docket 102-7], at 23) (defining "personal injury"). A review of the policy does not indicate that any other provisions would cover a claim for abuse of civil process, and Mr. Mitchell does not argue that any of the provisions in this policy apply to his abuse of process claim. Therefore, I **FIND** that the Samples Homeowner Policy does not offer coverage for Mr. Mitchell's claims of abuse of process.

### b.  The RMS/Damsel Policy

As noted above, the RMS/Damsel Policy does not cover "personal and advertising injury." Additionally, Mr. Mitchell's claim for abuse of process does not fit within the definitions of "bodily injury" or "property damage" caused by an "occurrence," contained within the policy, discussed above. Therefore, I **FIND** that the RMS/Damsel Policy does not offer coverage for Mr. Mitchell's claims of abuse of process.

### c.   The Eimors Policies

As with the Samples Homeowner Policy, abuse of civil process is not included within the definition of "personal and advertising injury" included in the Eimors Policies. (*See* Eimors Policy I [Docket 102-9], at 12; Eimors Policy II [Docket 102-12], at 11). Additionally, the complaint does not allege any action by Eimors in the alleged abuse of civil process. (*See* Am. State Ct. Compl. [Docket 102-1], at 13). Therefore, I **FIND** that the Eimors Policies do not offer coverage for Mr. Mitchell's claims of abuse of process.

### 4.   Breach of Contract

Mr. Mitchell's state court complaint alleges breach of contract. In particular, it states that "Damsel's actions and omissions amount to a breach of its Landlord covenants under the Lease with Cazon giving rise to a breach of contract claim[.]" (Am. State Ct. Compl. [Docket 102-1], at 13).

### a.   The Samples Homeowner Policy

The complaint does not allege a cause of action against Mr. Samples for breach of contract. Additionally, as discussed above, the policy includes an exclusion for actions arising out of a business engaged in by the insured. A breach of contract action against Damsel is clearly an action arising out of a business. Therefore, I **FIND** that the Samples Homeowner Policy does not offer coverage for Mr. Mitchell's claim for breach of contract.

### b.   The RMS/Damsel Policy

As discussed above, the RMS/Damsel Policy provides limited coverage for bodily injury and property damage. A breach of contract claim is neither a bodily injury nor property damage. Additionally, the RMS/Damsel Policy does not contain any additional clauses extending coverage

16

to a purely contract-based claim, and Mr. Mitchell does not argue that any such clause exists. Therefore, I **FIND** that the RMS/Damsel Policy does not offer coverage for Mr. Mitchell's claim for breach of contract.

### c.   The Eimors Policies

As discussed above, the Eimors Policies provide coverage for bodily injury, property damage, and personal and advertising injury. Mr. Mitchell's claim for breach of contract does not allege bodily injury, property damage, or personal or advertising injury within the definitions included in the Eimors Policies, and Mr. Mitchell does not argue that any provisions of the Eimors Policies apply to his breach of contract claim. Therefore, I **FIND** that the Eimors Policies do not offer coverage for Mr. Mitchell's claim for breach of contract.

### 5.   Negligence & Negligent Hiring

The state court complaint also alleges negligence against Eimors and Damsel, and negligent hiring against Damsel. (*See id.* at 13-15). Specifically, the complaint alleges that "Eimors was negligent in its electrical wiring of Cazon's restaurant space," and this negligence "proximately caused harm to Cazon by burning out several of its restaurant appliances prematurely." (*Id.*). It alleges that Eimors' negligent electrical wiring "caused the Charleston Fire Department to close 222 Capitol Street on August 31, 2007, resulting in lost revenue to Cazon." (*Id.*). The complaint also alleges that "Eimors and Damsel were negligent with respect to providing proper support to the flooring under Cazon's restaurant space," and because of this negligence "the Charleston Fire Department closed 222 Capitol Street on August 31, 2007, and subsequently informed Cazon and David Mitchell for the first time that Cazon's occupancy limit was 49 patrons

at any one time," making it "economically impossible for Cazon to continue to operate at a profit." (*Id.* at 14-15).

Mr. Mitchell's claim for negligent hiring alleges that "Damsel owed a duty of care to Cazon and David Mitchell to hire a competent contractor to build the restaurant space that Cazon used at 222 Capitol Street," and "breached that duty of care owed to Cazon by hiring Eimors to perform the construction of the restaurant space used by Cazon." (Am. State Ct. Compl. [Docket 102-1], at 15).

### a.   The Samples Homeowner Policy

Mr. Mitchell's claims for negligence and negligent hiring do not name Mr. Samples. Additionally, the business exclusion in the Samples Homeowner Policy applies to these counts, as they are only related to the business operations of Damsel and not Mr. Samples individually. Mr. Mitchell also does not argue that the Samples Homeowner Policy covers his counts for negligence and negligent hiring. Therefore, I **FIND** that the Samples Homeowner Policy does not apply to Mr. Mitchell's claims of negligence and negligent hiring.

### b.   The RMS/Damsel Policy

The RMS/Damsel Policy covers property damage, but only to the extent that it "is caused by an 'occurrence' that takes place in the 'coverage territory.'" (RMS/Damsel Policy [Docket 102-4], at 10). The policy does not cover property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." (*Id.* at 13). Each of Mr. Mitchell's claims of negligence relate to the construction performed by Eimors, a contractor, at 222 Capitol Street. (*See* Am. State Ct. Compl. [Docket 102-1], at 13-15).

18

Additionally, Mr. Mitchell does not argue that the RMS/Damsel Policy applies to his claims for negligence or negligent hiring. Therefore, I **FIND** that the RMS/Damsel Policy does not cover Mr. Mitchell's claims for negligence or negligent hiring.

### c.   The Eimors Policies

Like the RMS/Damsel Policy, property coverage under the Eimors Policies does not apply to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." (Eimors Policy I [Docket 102-9], at 1; Eimors Policy II [Docket 102-11], at 58). Additionally, the policies state that they do not apply to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (Eimors Policy I [Docket 102-9], at 2; Eimors Policy II [Docket 102-12], at 1). Each of Mr. Mitchell's claims for negligence are based on alleged damage caused to 222 Capitol Street and Mr. Mitchell's property by Eimors' construction. This category is expressly excluded from coverage under the Eimors Policies. Additionally, only Damsel was named in the negligent hiring count. Moreover, Mr. Mitchell does not argue that the Eimors Policies apply to his negligence or negligent hiring claims. Therefore, I **FIND** that the Eimors Policies do not cover Mr. Mitchell's claims for negligence or negligent hiring.

### 6.   Civil Conspiracy and Joint Venture

Mr. Mitchell's state court complaint alleges civil conspiracy and vicarious liability due to joint venture. Specifically, he alleges that the "[d]efendants conspired with one another and others to bring about the economic collapse of Cazon and harm to David Mitchell[.]" (Am. State Ct. Compl. [Docket 102-1], at 17). Conspiracy and joint venture are not independent causes of action;

rather, they are methods of extending vicarious liability to other defendants in the suit. Both conspiracy and joint venture require intentional acts by the parties. *See, e.g.*, *State Bancorp, Inc. v. U.S. Fid. & Guar. Ins. Co.*, 483 S.E.2d 228, 236 (1997).

### a.   The Samples Homeowner Policy

Conspiracy and joint venture do not fall within the definitions of personal and advertising injury, bodily injury, or property damage contained within the Samples Homeowner Policy, quoted above. Additionally, the policy contains an exclusion for "[b]odily injury or property damage which is expected or intended by an insured even if the resulting bodily injury or property damage . . . [i]s of a different kind, quality or degree than initially expected or intended." (Samples Homeowner Policy [Docket 102-7], at 26). Moreover, Mr. Mitchell does not argue that the Samples Homeowner Policy applies to his claims of civil conspiracy and joint venture. Therefore, I **FIND** that the Samples Homeowner Policy does not cover Mr. Mitchell's claims of conspiracy and vicarious liability due to joint venture.

### b.   The RMS/Damsel Policy

The RMS/Damsel Policy also contains an exclusion for intentional acts. The policy states that it does not apply to "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (Damsel/RMS Policy [Docket 102-4], at 11). As discussed above, Mr. Mitchell's complaint alleges intentional acts on behalf of all defendants for conspiracy and joint venture. Additionally, Mr. Mitchell does not argue that the RMS/Damsel Policy offers coverage for his claims of civil conspiracy and joint venture. Therefore, I **FIND** that the RMS/Damsel Policy does not cover Mr. Mitchell's claims of conspiracy and vicarious liability due to joint venture.

### c.  The Eimors Policies

The Eimors Policies also exclude "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." (Eimors Policy I [Docket 102-8], at 103; Eimors Policy II [Docket 102-11], at 66). Additionally, Mr. Mitchell does not argue that the Eimors Policies cover his claims of civil conspiracy and joint venture. For the reasons discussed above, I **FIND** that the Eimors Policies do not cover Mr. Mitchell's claims of conspiracy and vicarious liability due to joint venture.

### IV.     Conclusion

For the reasons discussed herein, Westfield Insurance Company's Motion for Summary Judgment on Coverage Issues [Docket 102] is **GRANTED** with regard to the Samples Homeowner Policy, and the RMS/Damsel policy, and **DENIED** with regard to the Eimors Policies. The only question remaining with regard to the Eimors Policies is whether Mr. Samples was acting as a member or owner of Eimors when he made the allegedly defamatory statements in the *Charleston Daily Mail*.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 30, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

21